## Case No. 3,449.

### CROWLEY et al. v. MAXWELL.

### [3 Blatchf. 401.][1]

·Circuit Court, S. D. New York. Jan. 23, 1856.

#### CUSTOMS DUTIES—APPRAISEMENT—PROTEST.

1. Where a protest against the payment of duties, and of a penalty for undervaluation, aft-.er appraisement and re-appraisement, on an invoice of needles, only claimed that the invoice stated the fair value of the needles when procured abroad, and neither the protest, nor the invoice, nor the entry, stated when the needles ·were procured, or that they had been purchased, .and the appraisements were based on the value of the needles when shipped, and exceeded the invoice value: _Held_, that although the needles were procured by purchase some time before they were shipped, and the price paid for them was the value stated in the invoice, and was ·their fair market value abroad at the time of ·their purchase, yet, under the protest, the importer could not claim that the needles were ·procured at any other period than the date of their shipment, and the appraisements were ·regular.

2. Under the 16th section of the act of August 30, 1842 (5 Stat. 563), a collector is justified in taking the time of the shipment from abroad of goods as the time of their purchase, unless he is notified, by the entry, or invoice, or protest, or in some other way, that some other time was the time of their purchase, and should be taken as the time for their appraisal.

3. The cases of Pierson v. Maxwell [Case No. ·11,159]; Cornett v. Lawrence [Id. 3,241]; Focke v. Lawrence [Id. 4,894]; and Thomson v. Maxwell [Id. 13,983],—cited and approved.

4. A protest which merely claims that an appraisement was illegal, but does not state in what the illegality consisted, is insufficient, un-.der the act of February 26, 1845 (5 Stat. 727).

This was an action [by William Crowley and others] against [Hugh Maxwell] the collector of the port of New York, ·to recover back an excess of duties, and a penalty for undervaluation, paid by the plaintiffs on a ·quantity of needles imported by them from England in January, 1851.

John S. McCulloh, for plaintiffs.

J. Prescott Hall, for defendant.

INGERSOLL, District Judge. The needles ·in question in this case were purchased by the plaintiffs in England at various times, between two and three months before they were shipped. Upon their arrival at New York, they were, by order of the collector, appraised by the appraisers, who valued them .at a sum much greater than that stated in the entry. They valued them as of the time when they were shipped from Liverpool. The plaintiffs, being dissatisfied with this appraisal, demanded a re-appraisal, which was accordingly had, and the re-appraisers valued them at a sum a little less than the sum fixed by the first appraisers, but exceeding, by more than 10 per cent., the value set down in the entry. The last appraisal was also based upon the value of the goods when ship-.ped from Liverpool. The duties were col-

lected upon the last appraisal, and an additional duty of 20 per cent., for the undervaluation, was also imposed and collected. The value set down in the invoice and entry was the price paid for the needles at the time they were purchased. But there is no evidence to show that the price at the time of the purchase was different from what it was at the time of the shipment from Liverpool. The invoice of the needles, which was dated on the 9th of January, 1851, and exhibited at the custom-house, did not show that they had been purchased, or how they had been procured. The entry did not show this. And there was no document exhibited at the custom-house to show when they had been purchased.

Upon paying the duties demanded, the plaintiffs, in a letter addressed to the defendant, used the following language: "In making this payment, we reiterate our protest against the same, and against the illegal and oppressive appraisement ˙which has been made, averring that our invoice states the fair ·value of the needles when procured in England, and we notify you that we shall hold you and the government responsible in damages for this exaction of excess of duties." After the two appraisements had been completed, the plaintiffs notified the defendant, by letter, under date of February 8th, 1851, that the needles were entered by them at the cost of about £271 2s. 1d.; and they tendered to the defendant $264, which they claimed was the whole duty, with legal interest, actually due, according to the fair value of the goods when procured by them in England, and at which fair value they claimed to have entered them, and also the sum of $370 for increased duty, and notified the defendant that they should resort to all proper means to recover back the monies tendered exceeding the duties on the valuation at which the goods were entered. Upon the payment of the duties, on the 10th of February, 1851, they again protested, and notified the defendant that the invoice stated the fair value of the needles when procured in England, and protested that the two appraisements were illegal, but did not state in what particular they claimed them to be illegal, except that the invoice stated the fair value of the needles at the time they were procured in England. Neither of the protests, nor the invoice, nor the entry states when the goods were procured in England—whether they were procured at the time they were shipped, or at some previous time.

The proof offered on the trial was, that the needles were obtained by the plaintiffs in England, where they were manufactured, by purchase, two or three months before they were shipped; that the price which they paid for the same was the fair market value of the same in the chief markets in England, at the time the purchase was made; and that that price was the value as carried out and stated in the invoice. As has been

[1] [Reported by Samuel Blatchford, Esq., and ·here reprinted by permission.]

already said, the two appraisements made by the appraisers were based upon their value at the time they were shipped. The 16th section of the act of August 30, 1842 (5 Stat. 563), and which was in force when the duties in question were imposed, provides, that it shall be the duty of the collector to cause the actual market value or wholesale price of goods, when purchased in a foreign country and imported into the United States, at the time when purchased, in the principal markets of the country from which the same shall have been imported into the United States, to be appraised and ascertained. There was no appraisement under the direction of the collector, of the value of the needles at the time when they were actually purchased. Indeed he had no document to show when they were purchased. Such appraisements as were made, were of their value at the time they were shipped. The price carried out in the invoice was the market value at the time they were purchased. Under these circumstances, if the collector had, before the imposition of the duties, been duly notified of the time of purchase, the plaintiffs would have been entitled to their goods upon the payment of duties based upon their value as set down in the invoice. Maxwell v. Griswold, 10 How. [51 U. S.] 242. And they would have a right, under such circumstances, to recover back the excess of duty and the penalty imposed and paid, provided they had made a proper protest. Id.

But it is claimed by the defendant, that the protest which the plaintiffs made was insufficient, on the ground that it did not state how and in what particular the appraisements made under the direction of the collector were illegal, nor when the needles were purchased; that, from any thing that appears in the protest, they might have been procured at the time they were shipped; and that, if they were procured at that time, the appraisements were legal.

The question presented by this claim of the defendant has, within a few years past, been frequently before this court. In the case of Pierson v. Maxwell [Case No. 11,159] the protests were "against the payment of duty on (the increased valuation specified) added to the entry value by the appraisers, because the original entry was the actual cost and full value at the time of purchase." The court, in giving its opinion in that case, says: "The protests designate no time of purchase different from that indicated by the invoices." "The plaintiffs cannot, under the protests, set up a different and long antecedent period of purchase; nor can they impugn the appraisement, by giving proof of any irregular acts of the appraisers or other officers in making it. Those particulars should have been distinctly and specifically pointed out to the collector by the protests, in order to enable him to rectify any thing erroneous in the manner of determin-

ing the value of the goods, or in the selection of the period at which that value was to be determined." In the case of Cornett v. Lawrence [Id. 3,241], the court, in speaking of what it is necessary for plaintiffs to set forth in their protest, in order to make it available, says that they must "set forth the specific objections, and refer him" (the collector) "distinctly to the facts on which their objections rest, in order to be enabled afterwards to avail themselves of them, in an action against him." In the case of Focke v. Lawrence [Id. 4,894], the court, in giving its opinion, says: "If they" (the plaintiffs) "supposed that the officers of the customs had committed any irregularity in ascertaining the dutiable value of the iron, or if they desired more formal action on the part of the collector, the protests should have called his attention to the particular omission or irregularity complained of." And again: "The collector is not personally subject to an action, unless he exacts them" (the excessive duties) "against the protest of the importer, 'setting forth distinctly and specifically the grounds of objection to the payment thereof.' This is demanded by the statute, and is a wise safeguard to a public functionary who exercises a very delicate and difficult trust, while it, at the same time, affords every reasonable protection to the rights of the importer." "The protests give no intimation to the collector that the purchases were at a time different from the dates of the invoices, or that the market prices at the periods of purchase were different from what they were at the times of the shipments or at the dates of the invoices." To the same effect are other decisions. Thompson v. Maxwell [Id. 13,983].

Testing the protest made by the plaintiffs by the rules of law laid down in the above cited cases, there is no difficulty in determining its insufficiency. The subject-matters of complaint which the plaintiffs have against the defendant are—First, that he, as collector, caused an appraisement of their needles to be made, fixing their value at the time of their shipment at Liverpool, instead of at the time they were purchased, between two and three months before the shipment; and, second, that the appraisers and re-appraisers conducted irregularly and illegally, in other respects, in the performance of their duty.

As to the first cause of complaint, the protest designates no time of purchase different from that indicated by the invoice, which bears date the 9th of January, 1851, the day when the needles were shipped. The plaintiffs cannot, under this protest, set up a different and long antecedent period of purchase. If the plaintiffs intended, at the time the protest was made, to set up any such irregularity as this in the appraisement, they should have particularly pointed it out, so that the irregularity could be corrected by the collector. As has been shown, neither the invoice nor the entry, nor any document

in the custom-house, gave notice to the collector, before the appraisement was made, when the purchase was made. He could only judge of the time when the needles were procured, by the date of the invoice, which purported to be the time they were shipped. In the case of Focke v. Lawrence, before cited, where the purchase was in point of fact some time before the shipment, and where, as in this case, neither the invoice nor the entry showed the time when the purchase was made, the court says, that, "by the entries and the invoices, the collector was justified in taking the place and times of shipment, as those of the purchases of the goods in question." The duty imposed upon the collector, by the 16th section of the act of August 30th, 1842, to cause the actual market value or wholesale price of goods, when purchased in a foreign country and imported into the United States, at the time when purchased, in the principal markets of the country from which the same shall be imported into the United States, to be appraised and ascertained, presupposes that the collector shall have knowledge of the time when they were purchased. And, if he has no such knowledge, he is justified in taking the place and the time of shipment, as the place and time when the purchase was made. It is impossible for him to take any other time, unless such other time is made known to him. And no other time was made known to him, either by the invoice, the entry, the protest, or any other document in the custom-house. If any other time was the time of purchase, and the importer wished that such other time should be taken as the time for the appraisal, then it was the duty of the importer to give the proper information to the collector, of such other time, as the true time of the purchase. If an importer does not give such information, and suffers in consequence of such neglect of duty on his part, he cannot, in an action against an official who has conducted honestly in the performance of a delicate and responsible duty, and who may have been led into an error (if error it can be called) by the neglect of duty on the part of the importer, be permitted to take advantage of such neglect of duty and make such official suffer by it.

The other ground of complaint on the part of the plaintiffs is, that the appraisers and the re-appraisers, even if they took the proper time for making the appraisement, conducted, in other respects, irregularly and illegally, in the performance of their duty. But the protest does not state in what the irregularity and illegality now complained of consisted. They cannot impugn the appraisement, by giving proof of any irregular acts of the appraisers or other officers in making it, unless they have specifically pointed out to the collector, in their protest, the irregularity complained of. If it had been pointed out, the collector would have had an opportunity to correct it. He could not determine, from the protest, that the irregularity now complained of existed. If it did exist and was an irregularity, it is to be presumed that he would have had it corrected, if he had had notice of it. The act of February 26, 1845 (5 Stat. 727), commonly called the "Protest Act," is express, that the protest shall and must point out, distinctly and specifically, the grounds of objection to the payment of the duties demanded. This protest does not comply with the statute. Judgment for defendant.